UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

MAY 1 7 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-360-GWU

DEALIE M. SCHULTZ,                                        PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                         DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or

1

Schultz

mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.    <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and</u>

2

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

3

symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be

4

considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2

5

Schultz

and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

6

"framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Dealie M. Shultz, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of discogenic and degenerative disorders of the back, "possible multiple sclerosis (working diagnosis)," and hypertension controlled on medication. (Tr. 18). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform her past relevant work as a restaurant worker and a hotel maid and, therefore, was not entitled to benefits. (Tr. 18-23). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were capable of "light" level exertion, could only occasionally climb ladders, stoop,

7

or crawl, and should avoid work hazards, and exposure to extreme cold and vibration. (Tr. 400). The VE testified that, with these restrictions, the plaintiff would be able to return to her past work. (Id.).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

The restrictions given by the ALJ in the hypothetical question reflected the opinion of a non-examining state agency physician, Dr. S. Mukherjee, who reviewed the evidence as of August 11, 2002. (Tr. 280-5).

The ALJ rejected a functional capacity evaluation by the plaintiff's most recent treating neurologist, Dr. Cary Twyman, who began treating the plaintiff on May 13, 2003 on referral from her family physician, Dr. Christine Foster, for complaints of tremors and fatigue in order to rule out the possibility of multiple sclerosis. (Tr. 295). Dr. Twyman completed a functional capacity assessment dated February 17, 2004 stating that Mrs. Shultz had diagnoses of multiple sclerosis, a seizure disorder, and fibromyalgia, as well as diffuse muscular pain. (Tr. 308). He opined that she was "not able" to work, could lift up to 20 pounds occasionally, needed to alternate sitting and standing at will, would "never/rarely" be able to bend, squat, crawl, climb, stoop, crouch, or kneel, could occasionally rotate or flex the neck, needed to avoid exposure to unprotected heights, moving machinery, automotive equipment, dust, fumes, gases, heat, cold, humidity, and temperature changes, vibration, and noise,

8

could not use her arms for repetitive manipulation, grasping, pushing, pulling, or reaching, could not use her feet or legs for repetitive movements, and would "constantly" experience pain severe enough to interfere with attention and concentration. (Tr. 308-10). When presented with a hypothetical question reflecting the specific restrictions, the VE testified that there were no jobs that the plaintiff could perform. (Tr. 400-1).

Dr. Twyman's initial examination noted that the plaintiff had several complaints, including spells of jerking and muscle spasm, a tremor, and low back pain radiating to the right leg. (Tr. 295). His examination showed decreased sensation on the right side of the plaintiff's body, 4/5 muscle strength, and impairment of finger to nose and rapid alternating movements. (Tr. 297). She also had an antalgic gait; her spine, however, had no pain and a full range of motion. (Id.). Dr. Twyman prescribed the medication Topamax for a "possible diagnosis" of complex partial seizures, which he felt would result in better "seizure control" compared to the Neurontin which Mrs. Shultz was already taking, and should also benefit her tremor, headaches, and stabilize her mood. (Tr. 298). Dr. Twyman provided a number of what he termed "working diagnoses," including relapsing remitting multiple sclerosis. (Id.). He recommended a lumbar puncture to evaluate

the possibility of multiple sclerosis. (Id.).[1] On June 17, Dr. Twyman reported that the lumbar puncture had been performed and "MS comprehensive profile was negative." (Tr. 292).[2] The plaintiff reported only one "tremor spell" since starting Topamax. (Id.). However, on the next reported office visit, July 25, 2003, Dr. Twyman again referred to "relapsing remitting multiple sclerosis" as a working diagnosis and prescribed injections of the medication Rebif, as well as increasing the dosage of Topamax. (Tr. 291).[3] The ALJ stated in her decision that there were no further treatment records from Dr. Twyman, but subsequent evidence from Dr. Foster indicated that Mrs. Shultz had responded well to such treatment and, therefore, she rejected Dr. Twyman's opinion of disability as being "contradicted by his own findings/impression," as well as the plaintiff's "excellent response" to medications. (Tr. 19).

While Dr. Foster did indicate in an August 4, 2003 office note that the plaintiff had been doing "wonderfully" with the Topamax, she had not yet begun interferon,

[1]"There are no specific blood tests to confirm the diagnosis of multiple sclerosis. Cerebrospinal fluid (CSF), from a lumbar puncture . . ., may show some abnormalities during an exacerbation of the multiple sclerosis." Ausman & Snyder's Medical Library, Lawyer's Edition, Section 6:104 (1990) (emphasis added).

[2]The doctor was aware of an abnormal brain scan at that time. (Tr. 292).

[3]Rebif, or "interferon beta," is "indicated for the treatment of patients with relapsing forms of multiple sclerosis to decrease the frequency of clinical exacerbations and delay the accumulation of physical disability," according to the Physician's Desk Reference, 60th edition, p. 3164.

10

and Dr. Foster also indicated that the workup with Dr. Twyman had shown multiple
sclerosis as diagnosed by lumbar puncture. (Tr. 304). Significantly, there is a
subsequent office note from Dr. Twyman in the Court transcript dated December 1,
2003, in which the neurologist again referred to "multiple sclerosis occurring in a
relapsing remitting pattern," described as weakness and stiffness of the legs, poor
balance, numbness, tingling, bladder urgency, and fatigue, and as "interfering in
work and home responsibilities." (Tr. 305). Dr. Twyman's examination showed a
mildly ataxic and slowed gait, decreased sensation to light touch on the right side,
and give-way reduction of motor strength in the right arm. (Tr. 306). Otherwise, the
plaintiff stated that she had only had one seizure since the previous follow-up, and
had been on bed rest for a week due to back pain. (Tr. 305). This office note
strongly suggests that there may be a missing office note or notes from Dr. Twyman
between July and December, 2003 but, in any case, confirms that the specialist did
diagnose multiple sclerosis, despite the apparently negative results of the lumbar
puncture. While the ALJ correctly noted that the Commissioner was not bound by
Dr. Twyman's conclusory opinion of the plaintiff was not able to work, the doctor also
gave specific functional restrictions related to the problems for which he was treating
her, and no other examining or reviewing source with access to his records

11

Schultz

expressed an opinion.[4]  Given that the ALJ was apparently under the impression that

there were no office notes from Dr. Twyman subsequent to July, 2003, the case will

be remanded for further consideration, including consideration of evidence from Dr.

Twyman submitted to the Appeals Council (Tr. 366-79).

The decision will be remanded for further consideration.

This the ⟋7 day of May, 2006.

G. WIX UNTHANK
SENIOR JUDGE

---

[4]Dr. Mukherjee had completed his non-examining assessment almost a year
before Dr. Twyman even began treatment.  As the counsel for the plaintiff notes, Mrs.
Schultz did have some objective evidence of back problems, including an MRI showing
degenerative disc disease with a protrusion at L5-S1 (Tr. 176, 247), and a consultative
physical examiner had indicated in May, 2002 that the plaintiff's ability to sit, stand, and
move about "may be impaired" due to back pain (Tr. 174).